UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GREGORY SCHROEDER,          Case No. 11-14778

        Plaintiff,          Gerald E. Rosen
v.          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
          United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 18)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On March 13, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gerald E.

Rosen referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 4).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 17, 18).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on February 9, 2010, alleging that she

became unable to work on March 12, 2009. (Dkt. 10-2, Pg ID 62). The claim was initially disapproved by the Commissioner on August 12, 2010. (Dkt. 10-2, Pg ID 62). Plaintiff requested a hearing and on December 7, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Anthony B. Roshak, who considered the case *de novo*. In a decision dated February 4, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 10-2, Pg ID 62-70). Plaintiff requested a review of this decision. (Dkt. 10-2, Pg ID 58). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on July 16, 2011, denied plaintiff's request for review. (Dkt. 10-2, Pg ID 52-55); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 40 years of age on the alleged disability onset date.  (Dkt. 10-2,
Pg ID 69).  Plaintiff's has past relevant work history as a shipping clerk and
dispatcher.  (Dkt. 10-2, Pg ID 69).  The ALJ applied the five-step disability
analysis to plaintiff's claim and found at step one that plaintiff had not engaged in
substantial gainful activity since March 12, 2009, the alleged onset date.  (Dkt. 10-
2, Pg ID 64).  At step two, the ALJ found that plaintiff's osteoarthritis/
degenerative joint disease involving multiple joints, inguinal hernia, benign
prostatic hypertrophy (BPH), bipolar disorder, major depressive disorder,
recurrent, agoraphobia, and alcohol abuse, by history were "severe" within the
meaning of the second sequential step.  *Id*.  At step three, the ALJ found no
evidence that plaintiff's combination of impairments met or equaled one of the
listings in the regulations.  *Id*.  At step four, the ALJ found plaintiff could not
perform his past work, but could perform sedentary work, limited to unskilled
tasks.  (Dkt. 10-2, Pg ID 67-68).  At step five, the ALJ denied plaintiff benefits
because plaintiff could perform a significant number of jobs available in the
national economy.  (Dkt. 10-2, Pg ID 69).

### B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in failing to make a proper mental

Report and Recommendation
Cross-Motions for Summary Judgment
*Schroeder v. Comm'r*; Case No. 14478

RFC determination by not incorporating those limitations he credited, namely the moderate limitations in concentration, persistence, and pace. Plaintiff says that "unskilled" work says nothing about concentration, persistence, and pace, and shows that the ALJ failed to make a complete and accurate RFC determination. Thus, plaintiff argues that remand is necessary to address the lack of any additional limitations regarding concentration, persistence, and pace, particularly as all of the doctors of record indicate he has trouble with all of these three things due to his impairments and medication side-effects, as well as difficulty with normal work stress.

Plaintiff contends that all of the reasons the ALJ gives for dismissing the treating opinion of record are erroneous. First, the ALJ dismisses Dr. Hoffman's limitations because they are purportedly without support of objective evidence; according to plaintiff, the ALJ, however, does not indicate what would be needed or what is missing. (Tr. 20). In the opinions themselves, Dr. Hoffman notes the signs, symptoms, and limiting factors that support his findings. Plaintiff contends that the ALJ's dismissal of this is nothing more than his own lay opinion. Similarly, the ALJ points to the lack of support for a voiding issue, purportedly not borne out by the record or plaintiff's testimony, and claims that Dr. Hoffman has not seen plaintiff since 2009, but this is incorrect. (Tr. 21). Indeed, there are records from August of 2009 through March of 2010 (Tr. 302-19), and then again

Report and Recommendation
Cross-Motions for Summary Judgment
*Schroeder v. Comm'r*; Case No. 14478

in September of 2010 (Tr. 357-59) in the record.  Moreover these notes, which the ALJ ignores, contain references to treatment of plaintiff's enlarged prostate (benign prostate hypertrophy, i.e. BPH), irritable bowel syndrome, and diverticulitis, which have been long-standing issues since his onset date, and both of which cause voiding issues, particularly the BPH.  Once again, the ALJ points to nothing in the evidence that detracts from Dr. Hoffman's findings, making his dismissal of the treating opinion improper and based on his own lay opinion.

Plaintiff argues that the ALJ also ignores other evidence that is supportive of Dr. Hoffman's finding, including SSA's own consultative examiner.  Indeed, Dr. Shah completed both mental and physical examinations, rendering an opinion that plaintiff's congenital deformity of the hips and lower extremities, chronic bilateral hip and knee pain, chronic osteoarthritis of multiple joints, a bipolar disorder, and diverticulitis cause mild to moderate functional limitations that limited him to no prolonged standing or walking, and an ability to work only 4 to 8 hours at a time, indicative of an ability to sustain even full-time sedentary, unskilled work, as found by the ALJ.  (Tr. 277).  Then, in the mental examination, Dr. Shah diagnosed a major depressive disorder, recurrent with psychotic features, which he noted was only partially under control with a GAF of 55.  (Tr. 329).  This supports the multiple moderate impairments and other limitations noted by Dr. Hoffman in his Mental RFC, which the ALJ does not even address.  Finally,

Report and Recommendation
Cross-Motions for Summary Judgment
*Schroeder v. Comm'r*; Case No. 14478

contrary to the ALJ's finding, even the nonexamining psychiatrist reviewer, Zahra Khadmian, found moderate impairment in ADLs, social functioning, and concentration, persistence and pace.  (Tr. 257-70).  According to plaintiff, the ALJ's findings are clearly at odds with the examining sources, and the ALJ fails to perform his duty to weigh and consider all of the evidence of record.

Plaintiff also maintains that the ALJ's credibility determination is based on flawed reasoning, requiring remand, as his rejection of plaintiff's credibility was the basis for his RFC determination.  First, the ALJ inappropriately held plaintiff's minimal activities and interactions with others against him in determining the special technique limitations and credibility.  (Tr. 19).  Indeed, the ALJ holds the fact that plaintiff lives with others and goes to Alcoholic's' Anonymous against his allegations of disability limitations in all of the special technique categories. However, according to plaintiff, interaction in a support group or with supportive friends is not the same as interaction with others in the workplace or outside of an agoraphobic person's house, and the ALJ fails to explain how it shows a lack of credibility.  Next, contrary to the ALJ's indication that he cleans house, plaintiff indicated his roommates take care of most things, and he need not be completely unable to function in any way for a finding of disability.  Plaintiff contends that the ALJ sets too high of a bar based on his own lay opinion of mental impairment, requiring reversal.  According to plaintiff, his activities were minimal with pain

even putting a dish into the dishwasher, and the ability to only do a few things a day at his own pace, not every day, 8 hours a day in a competitive work place.

The ALJ also incorrectly concludes that there is no objective support for plaintiff's mental impairments, indicating that plaintiff has not been seen for treatment at Oakland since 2009, and that plaintiff reported to his doctors that he was looking for work.  According to plaintiff, however, none of these things undermine credibility.  Contrary to the ALJ's statement, there is ample evidence of treatment for mental impairments, as he continued to receive prescription medicines and was seen for follow-up treatment with Dr. Hoffman, and by another physician at Advantage Health Centers throughout 2010.  Also, plaintiff asserts that the fact that he could not afford more treatment than he was able to obtain, or that he continued to look for work simply further adds to his credibility rather than detract from it because plaintiff desires to work, but cannot sustain any due to his impairments.  Further, SSR 96-7p requires the ALJ to consider the reasons for a lack of more treatment, which the ALJ did not do. Finally, the ALJ failed to consider plaintiff's prescription side-effects contrary to SSR 96-7p and 20 C.F.R. § 404.1529.  Plaintiff points out that many of the prescriptions cause dizziness, drowsiness, tiredness, weakness, and difficulty concentrating, which would render plaintiff "off task" enough (in addition to his mental impairments and pain) to preclude all work per the testimony of the VE.  Additionally, SSR 96-7p

recognizes that the prescription of strong narcotic pain medications support the

credibility of plaintiff's symptoms.  Moreover, the ALJ ignores plaintiff's weight

loss and enlarged prostate, which lend credibility to his pain and urinary frequency.

According to plaintiff, the ALJ finds 4,000 jobs over three different job titles

to be a significant number, but the VE stated there were only 2,000 jobs at the

sedentary level, making it unclear whether there is a significant number of jobs

herein, particularly once the ALJ's moderate limitations in concentration,

persistence, and pace are incorporated.  Plaintiff also contends that the VE's

testimony is vague and unsupported, simply indicating without any examples or

specificity that there are assembler, packer, or sorter jobs at the sedentary,

unskilled level.  (Tr. 55); *Allshouse v. Comm'r of Soc. Sec.*, 2008 WL 4372646

(E.D. Mich. 2008) (holding where the VE has not provided DOT numbers, the

court is unable to determine whether the VE adequately identified jobs in response

to the ALJ's hypothetical); *see also Brazle v. Astrue*, 2008 U.S. Dist. LEXIS

25734 (M.D. Tenn 2008) (remanding when the VE did not provide occupational

codes from the DOT for the jobs identified, and therefore the plaintiff did not have

any way of verifying whether the VE's testimony was consistent with the DOT).

Plaintiff contends that he cannot challenge such vague and unsupported jobs

without further identification as there are myriad packaging, assembler, and sorter

jobs in the DOT, most of which are above the sedentary level.  Moreover, since the

ALJ based his RFC determination on the VE's testimony as to what limitation would not preclude work, plaintiff contends that the ALJ's step 5 determination is erroneous and improper.  Not only are the descriptions so vague as to not be able to determine whether the jobs actually exist at the sedentary, unskilled level in the numbers the VE has cited, the VE indicated some conflict with the DOT, but failed to obtain an explanation as to the basis of the VE's opinion.  *See Kyle v. Comm'r of Soc. Sec*, 609 F.3d 847 (6th Cir. 2010) (ALJ must take administrative notice of reliable job information available from various governmental publications such as the DOT and where ALJ relies on testimony of the VE that conflicts with DOT, ALJ must elicit a reasonable explanation).  According to plaintiff, the ALJ failed to even perform his affirmative duty to explore and verify whether the job, proffered by the VE, conflicted with the DOT, requiring reversal.  SSR 00-4p.

       C.     <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, plaintiff's criticism of the ALJ's finding that the exertional limitations found by Dr. Hoffmann were not supported by any objective medical evidence because the ALJ did not discuss what evidence was missing or what evidence could potentially have supported the opinion misses the point.  The Commissioner contends that the ALJ was not required to discuss what evidence, if it existed, would be sufficient to support Dr. Hoffmann's opinion.  Rather, in determining the weight to be assigned to Dr. Hoffmann's opinion, the

ALJ was required to consider the amount of relevant evidence Dr. Hoffmann presented to support his opinion. *See* 20 C.F.R. § 404.1527(d)(3). Although plaintiff makes the conclusory statement that Dr. Hoffmann cited the "signs, symptoms, and limiting factors" to support his finding, Dr. Hoffmann offered almost no evidence on this point, in the view of the Commissioner. Rather, Dr. Hoffmann merely stated that the clinical findings and objective signs that supported his opinion were that plaintiff had an enlarged prostate and left inguinal hernia. (Tr. 368). According to the Commissioner, the record contains little objective evidence on either condition, and insufficient evidence to support Dr. Hoffmann's opinion. The only diagnostic imaging in the record was a prostate ultrasound that showed only a "slightly" enlarged prostate. (Tr. 362). The only clinical examination evidence of an enlarged prostate was contained in a partially illegible April 2010 treatment note. (Tr. 320). Many of the limitations identified by Dr. Hoffmann were attributed to plaintiff's "voiding issue." (Tr. 370). However, the ALJ found a lack of evidence to support a severe voiding issue. (Tr. 21). Furthermore, the ALJ noted that plaintiff never mentioned a voiding issue at the hearing. (Tr. 21). Given that problems urinating was the most significant basis for Dr. Hoffmann's opinion, the Commissioner argues that it was reasonable to expect that plaintiff would have reported it at the hearing. Indeed, plaintiff was diagnosed with an enlarged prostate in April 2010, but, during a consultative

examination the next month, he did not mention his prostate condition and denied urinary incontinence.  (Tr. 332).

The Commissioner asserts that plaintiff incorrectly argues that the ALJ ignored Dr. Shah's September 2009 consultative examination, which he claims bolsters Dr. Hoffmann's opinion.  However, the ALJ explicitly mentioned Dr. Shah's examination and it undercuts Dr. Hoffmann's opinion.  (Tr. 18).  Dr. Shah found that plaintiff had the "functional capacity for working 4 to 8 hours with limitations of prolonged standing and walking."  (Tr. 277).  Dr. Shah did not find the types of extreme limitations on sitting and standing identified by Dr, Hoffman, and Dr. Shah's opinion was entirely consistent with the ALJ's finding that plaintiff could perform sedentary work.  (Tr. 19, 277, 370).  Finally, the Commissioner contends that plaintiff inappropriately criticizes the ALJ for stating that Dr. Hoffmann had not seen plaintiff since 2009, because the record contained treatment notes between August 2009 and March 2010, as well as in September 2010.  According to the Commissioner, the ALJ made no such statement and explicitly stated that plaintiff was treated at East Area Family Physicians, Dr. Hoffmann's office, between March 2008 and September 2010.  (Tr. 18, referencing exhibits 9F and 15F, corresponding to Tr. 302-19 and 357-59).

The Commissioner asserts that the ALJ properly rejected Dr. Hoffman's opinion that plaintiff had a number of mental limitations, many of which he

attributed to plaintiff's agoraphobia and voiding issues. (Tr. 372-75). The ALJ

rejected this assessment because plaintiff had last been seen at Oakland in August

2009, Dr. Hoffmann's opinion was not supported by any narrative report, and the

opinion appeared to be based solely on plaintiff's subjective complaints. (Tr. 21).

Although plaintiff is arguably correct that the ALJ should have addressed why

plaintiff had not been back to Oakland, the ALJ's other two reasons were

well-founded. Dr. Hoffmann offered a brief explanation of plaintiff's condition,

but there was no narrative report sufficient to address his allegedly extreme

limitations. (Tr. 372). Dr. Hoffmann apparently based the identified mental

limitations on plaintiff's agoraphobia and voiding issues. (Tr. 372). But,

according to the Commissioner, aside from plaintiff's subjective reports, there is

insufficient evidence to demonstrate an extreme problem with urination.

Furthermore, while the record shows that plaintiff had anxiety and reported

self-isolation, there was no evidence of treatment specifically for agoraphobia. (Tr.

230, 321, 327, 360). Indeed, as late at August 2009, plaintiff was playing soccer

with others. (Tr. 317). Finally, plaintiff argues that the ALJ ignored that Dr.

Hoffman's opinion was supported by Dr. Shah's mental evaluation. (Pl.'s Brief at

16). Although Dr. Shah did opine that plaintiff had moderate to severe functional

impairments in occupational activities, it did not support Dr. Hoffmann's opinion

because it was made on an entirely different basis. (Tr. 329). Dr. Shah noted that

plaintiff complained of self-isolation, but specifically stated that his limitations were due to major depressive disorder with psychotic features. (Tr. 329). Dr. Shah did not diagnose agoraphobia and there is no mention in the report of urinary problems. Thus, the Commissioner contends that the ALJ reasonably discounted Dr. Hoffmann's opinion regarding plaintiff's mental limitations.

The Commissioner also argues that the ALJ properly considered plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, and reasonably discounted them because, among other reasons, they conflicted with his reported daily activities, were inconsistent with his continued search for work, and were unsupported by the objective medical evidence. (Tr. 20-21). The ALJ found that plaintiff's reported activities were consistent with the ability to perform sedentary, unskilled work on a consistent basis. (Tr. 21). For example, despite plaintiff's claims of agoraphobia, he reported shopping for groceries and personal items one to three times a month, living with two other people, and attending church functions and fellowships several times a week. (Tr. 178-79). Plaintiff reported that he needed help lifting and carrying, but performed light household chores. (Tr. 177). Plaintiff argues that associating with support groups and supportive friends is not equivalent to interacting in the workplace (Pl.'s Brief at 18). However, plaintiff reported calling people and meeting with others, in addition to Alcoholics Anonymous sessions, on a regular basis. (Tr.

179).  Although plaintiff did report that his roommates lifted things for him, this does not mean that he was unable to perform chores.  (Tr. 51).  Indeed, he reported at least some ability to perform chores on two occasions, and any difficulty he had lifting was accommodated by the ALJ's finding that he could perform no more than sedentary work.  (Tr. 140, 177).  Thus, the Commissioner contends that the ALJ reasonably found that plaintiff's reported activities undermined his subjective complaints.

According to the Commissioner, the ALJ found that there was no objective evidence to support plaintiff's claimed mental limitations and noted that plaintiff reported looking for work.  (Tr. 21).  Indeed, the majority of treatment notes from Oakland contained very few clinical observations.  (Tr. 213-14, 216-18, 220-24, 226-28, 237-38, 244).  Plaintiff does not appear to dispute the ALJ's finding regarding the lack of objective evidence.  Plaintiff argues that his search for work was not probative of his credibility but the ALJ contends that it demonstrates that he believed that he was capable of working.  (Tr. 277, 372).  Plaintiff also argues that the ALJ erred by not considering the side effects of his medications in determining his credibility, as required by the regulations.  (Pl.'s Brief at 19).  However, plaintiff does not cite to any evidence showing that he did have medication side effects.  Thus, the Commissioner contends that substantial evidence supports the ALJ's finding that plaintiff's statements regarding the

intensity, persistence, and limiting effects of his symptoms were less than fully credible.

The Commissioner acknowledges that courts have often found that limitations to uncomplicated and unskilled work may not be sufficient to account for a moderate limitation in concentration, persistence, or pace.  However, the Commissioner also points out that there is no bright-line rule that a restriction to unskilled work cannot account for a moderate limitation in concentration, persistence, or pace.  And, where there is ample support for the restriction, as was the case here, a limitation to unskilled work can adequately account for a claimant's difficulties with concentration, persistence, or pace.  Although not discussed by the ALJ, the Commissioner points out that two medical sources found that despite plaintiff's moderate limitation in concentration, persistence, or pace, he could perform simple work.  (Tr. 273, 341).  In September 2009, Dr. Khademian opined that plaintiff had a moderate limitation in concentration, persistence, or pace, but "retained adequate mental ability for a sustained simple work activity currently."  (Tr. 273).  In August 2010, Dr. Tripp found the same moderate limitation, and opined that plaintiff was able to perform simple, one and two step procedures and interact with coworkers, supervisors, and the public "with sustainability and persistence."  (Tr. 341).  Thus, the Commissioner asserts that the ALJ adequately accounted for plaintiff's moderate limitation in concentration,

persistence, or pace by limiting him to unskilled work in the RFC and relying on the VE's identification of unskilled jobs.

The Commissioner disagrees with plaintiff's contention that the ALJ did not satisfy his duty pursuant to Social Security Ruling 00-04p to ask the VE whether his testimony conflicted with the Dictionary of Occupational Titles. While a portion of the hearing transcript is marked "inaudible," the Commissioner argues that it is clear that the ALJ made the required inquiry. The ALJ asked a question marked in the record as "inaudible," and the VE responded "no conflict but the DOT is silent and does not address the extent to which people can change between sitting and standing in employment." (Tr. 56). The Commissioner says that it is apparent that the ALJ asked the VE whether his testimony conflicted with the DOT. While plaintiff argues that while the VE testified that there was a conflict between his testimony and the DOT, there was no explanation as to the basis for the VE's opinion, the Commissioner contends that plaintiff's argument contradicts his claim that there was no discussion at the hearing regarding conflicts between the DOT and the VE's testimony. Furthermore, the VE explained the conflict between his testimony and the DOT by stating that his testimony regarding how many jobs at the sedentary and light levels could be performed by a person that needed to shift positions as needed was based on his own experience speaking with employers and placing workers 0in the types of jobs discussed. (Tr. 56).

Plaintiff also argues that the VE's identification of jobs was vague and suggests that the VE was required to supply DOT numbers so that plaintiff could challenge his testimony.  According to the Commissioner, plaintiff's argument is based on an incorrect understanding of an ALJ's obligation to insure that there are no unexplained, apparent conflicts between a VE's testimony and the DOT. According to the Commissioner, an ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Ruling 00-04p.  *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168 (6th Cir. 2009), citing *Lindsley v. Comm'r. of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). Rather, the obligation to investigate an inconsistency falls to plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  *Beinlich*, 345 Fed. Appx. at 168.  Plaintiff's counsel questioned that VE on other topics, but did not inquire into any potential conflicts or ask for any information to aid in identifying conflicts, such as the DOT codes plaintiff now believes were critical.  The Commissioner asserts that plaintiff's argument is similar to an argument rejected by the court in *Rich v. Comm'r of Soc. Sec.*, 2008 WL 4450285 (E.D. Mich. 2008).  In *Rich*, the court noted that there was no requirement in the regulations for a VE to supply DOT numbers and stated that it "decline[d] to find an error occurred because [Rich] would like to have additional requirements imposed, particularly in this case, when [Rich] was represented at the

hearing by an advocate . . . who took an active role in the hearing." *Id* at *5.

Plaintiff also notes that the ALJ stated that there were 4,000 jobs that Plaintiff could perform, but that the VE testified that there were only 2,000 jobs at the sedentary level, calling into question whether there were a significant number of jobs. According to the Commissioner, there no is inconsistency between the ALJ's decision and the VE's testimony. The VE testified that there were 2,000 jobs in the region at the sedentary level, and twice that number statewide. (Tr. 55). The ALJ noted that there were 4,000 jobs that plaintiff could perform in the state of Michigan. (Tr. 22). By adopting the VE's testimony that there were 2,000 jobs in the region, the ALJ identified jobs existing in significant numbers that plaintiff could perform. *See Hall v. Bowen*, 837 F.2d 272, 273, 275-76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing § 404 .1527(d)(2). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."

In this case, the path of the ALJ's reasoning as to all of the medical opinions is difficult to follow. He gave few articulated reasons for rejecting the opinions of plaintiff's treating physician. The ALJ's analysis of the Dr. Hoffman's opinion of plaintiff's physical limitations is as follows:

> The significant limitations in sitting, standing, walking, lifting, and carrying imposed by Dr. Hoffman (Exhibit 17F) are without any objective clinical, laboratory, or x-ray support in the record and, thus, cannot be afforded any controlling weight in the evaluation of Claimant's residual functional capacity (Social Security Ruling 96-2p).
>
> * * *
>
> There is no objective clinical, laboratory, or x-ray date to substantiate the contention of Dr. Hoffman that Claimant has "severe voiding issues 20 times a day," and the undersigned is constrained to point out that Claimant made no mention of any "voiding issues" in his testimony at the hearing.

(Dkt. 10-2, Pg ID 67-68). It is not clear to the undersigned that plaintiff's failure to mention this issue, among the laundry list of other physical and mental problems he testified about, is dispositive of whether Dr. Hoffman's opinion is entitled to controlling weight. As plaintiff points out, the ALJ did not specifically inquire about this issue, rather, he merely relies on plaintiff's failure to bring it up at the hearing. Moreover, there is mention of plaintiff's "voiding issue" in Dr. Hoffman's treatment notes, which includes prescribing medications for plaintiff to address this issue. Dr. Hoffman's opinions were given in November, 2010. In the

months prior to that evaluation, plaintiff was having trouble obtaining the

medication prescribed by Dr. Hoffman for this condition because the social worker

did not order it; it was also noted that the condition was worsening.  (Dkt. 10-8, Pg

ID 413-414, 417-419).  The hearing was in December, 2010.  It is not clear from

the record when plaintiff began taking the medication or whether there was a

significant improvement in this condition.  This seems to be an area that should

have been explored by the ALJ at the hearing, giving the status of plaintiff's

condition, the difficulty obtaining the medication, and the bases for Dr. Hoffman's

opinions.  *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social security

proceedings–unlike judicial ones–are inquisitorial, not adversarial." Consequently,

an ALJ has a "duty to investigate the facts and develop the arguments both for and

against granting benefits.").

    And, it is not clear what weight the ALJ gave to the opinions of the various

consulting physicians.  The regulations required the ALJ to weigh the opinion of

consulting physicians under the factors including consistency, supportability,

specialization, etc.  *Converset v. Astrue*, 2013 WL 646801, *11; 20 C.F.R. §

404.1527(c)(2)-(6).  As pointed out in *Converset*, the regulations emphasize this

requirement by reiterating it no less than three times. *Id*. citing, 20 C.F.R. §

404.1527(d) ("we consider all of the following factors in deciding the weight to

give any medical opinion...."); 20 C.F.R. § 404.1527(f)(2)(ii) (factors apply to

opinions of state agency medical consultants); 20 C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2.

Dr. Khademian opined in September 2009 that plaintiff had an adequate mental ability for sustained "simple work activity currently" despite moderate restrictions in the activities of daily living, moderate difficulties maintaining concentration, persistence or pace and moderate difficulties in social functioning. (Dkt. 10-7, Pg ID 309-325).  In May 2010, Dr. Shah conducted a psychiatric examination, concluding that plaintiff had a moderate to severe functional impairment of occupational activity because of major depression with psychotic features, partially treated.  Dr. Shah also opined that he is subject to relapse and the pressure of employment would be a major factor in decompensation.  (Dkt. 10-7, Pg ID 381).  Dr. Tripp conducted a file review In August 2010 and concluded that Dr. Shah's opinion should be given no weight because it was based on a one-time examination and the "treating source findings should have controlling weight." (Dkt. 10-8, Pg ID 394).  Dr. Tripp concluded that plaintiff was able to perform simple 1-2 step procedures and interact with co-workers, supervisors and the public with sustainability and persistence, despite moderate limitations in the ability to respond appropriately to changes in the work setting, the ability to carry out instructions, and the ability to understand and remember detailed instructions.

(Dkt. 10-8, Pg ID 392-394).

In September 2009, Dr. Shah opined that plaintiff had mild to moderate functional impairment of occupational activity because of lower back, hip, and joint pain and had the functional capacity to work 4-8 hours with limitations in prolonged standing and walking. (Dkt. 10-7, Pg ID 329). In May, 2010, Dr. Montasir conducted a physical examination of plaintiff and concluded that he "should be able to work as far as his physical condition is concerned," should be able to walk up to a mile, and had no limitations in climbing stairs or with manipulations. (Dkt. 10-7, Pg ID 386).

The weight given to these opinions and their impact on plaintiff's RFC is simply not present in the ALJ's decision. Some are not even mentioned. Notably, all of these opinions were rendered prior to Dr. Hoffman's, so none of them offer any opinion as whether Dr. Hoffman's opinions are supported by the record evidence (some of which they did not have access to either at the time the opinions were rendered). Most importantly, in this case, the ALJ simply did not weigh any these opinions and therefore, failed to apply the correct legal criteria.

Moreover, if the ALJ determined that Dr. Hoffman's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F .3d 399, 406 (6th Cir. 2009).  This was not done either.  And, even if Dr. Hoffman's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to fully explain why Dr. Hoffman's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2).

As to the remaining justifications offered by the ALJ, the undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. 1993) (unpublished opinion), *quoting Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mut. Auto. Ins. Co.*,463 U.S. 29, 50 (1983) (citation omitted).  "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning his omission in considering the opinion of plaintiff's treating physician.

This matter should be remanded for the ALJ to further explain the weight given plaintiff's treating physician opinions and those offered by consulting physicians.  Given this conclusion, the ALJ will have to re-assess plaintiff's credibility and additional vocational expert testimony may be required, depending on the conclusions the ALJ's reaches on remand regarding plaintiff's RFC.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 1, 2013                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 1, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Evan A. Zagoria, Frederick J. Daley, Jr., Derri T. Thomas, AUSA, and the Commissioner of Social Security</u>.

<u>s/Deborah J. Goltz for Tammy Hallwood</u>
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov